# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-CR-2033 CJW-MAR |
| Plaintiff, | |
| vs. | **NUNC PRO TUNC ORDER** |
| ANTONIO RAYSHAUN EVANS, | |
| Defendant. | |

_____

## I.    INTRODUCTION

This matter is before the Court to correct its prior Order (Doc. 162) on defendant's Renewed Motion for Hearing to a Jury and Denial of Prior Conviction (Doc. 152).  For the following reasons, the Court **vacates** its prior Order and **denies** defendant's motion for a jury trial.

## II.    RELEVANT BACKGROUND

On May 17, 2023, a grand jury indicted defendant on one count of possession with intent to distribute controlled substances.  (Doc. 2).  After issuing a Superseding Indictment and Second Superseding Indictment on September 20, 2023, and October 4, 2023, respectively (Docs. 29 & 57), on January 10, 2024, the grand jury returned a Third Superseding Indictment charging defendant with six counts.  (Doc. 90).  Relevant here are Counts 1 and 2.  Count 1 charged defendant with conspiracy to distribute a controlled substance in violation of Title 21, United States Code, Sections 846, and 841(a)(1); Count 2 charged defendant with distribution of a controlled substance in violation of Title 21, United States Code, Section 841(a)(1).  Both Counts 1 and 2 of the Third Superseding Indictment further alleged that prior to defendant committing the respective offense charged, he was convicted of the following offense:

On or about April 3, 2015, defendant was convicted in the Iowa District

Court for Black Hawk County, Case No. FECR199855, of Possession of a Controlled Substance with Intent to Deliver and Being a Second Offender and Habitual Offender and Drug Tax Stamp Violation and Being a Habitual Offender, felony drug offenses, and a serious drug felonies [sic], for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

(*Id.*, at 2–3). Counts 1 and 2 of the Third Superseding Indictment alleged that in light of this predicate offense, defendant's commission of the respective offense charged constituted a "violation of" (which could be taken to mean "triggers the enhanced penalty provisions under") Title 21, United States Code, Sections 841(b)(1)(A)[1] and 851.[2] (*Id.*).

---

[1] Under Section 841(b)(1)(A), a defendant is subject to an enhanced mandatory minimum sentence of fifteen years imprisonment, and enhanced maximum penalties, if the defendant has a conviction for a "serious drug felony," defined as an offense described in Title 18, United States Code, Section 924(e)(2) for which "the offender served a term of imprisonment of more than 12 months" and for which the offender was "release[d] from any term of imprisonment . . . within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

[2] Section 851 sets forth procedures to establish prior convictions for the purpose of increased punishment for crimes under Section 841. Section 851 requires a notice, or an "information," to be filed by the government prior to trial or entry of a guilty plea that "stat[es] in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). If such a notice is given, the court is required "after conviction but before pronouncement of sentence [to] inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information" and to "inform [the defendant] that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." *Id.* § 851(b).

If a defendant "denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid," the defendant is required to "file a written response to the information." *Id.* § 851(c)(1). Likewise, if a defendant claims that "a conviction alleged in the information was obtained in violation of the [United States] Constitution," the defendant "shall set forth his claim, and the factual basis therefor, with particularity" in the response. *Id.* § 851(c)(2). Failure to file a response, in effect, constitutes affirmation of the sentencing enhancement based on the prior conviction alleged in the information. *See id.* §§ 851(b), (c)(2), (d)(1) ("If the person files no response to the information, . . . the court shall proceed to impose sentence upon him as provided by this part.").

In the event the defendant files a response, Section 851 provides that the court must "hold a hearing to determine any issues raised by the response which would except the person from increased punishment," and that "[t]he hearing shall be before the court without a jury and either party may introduce evidence." *Id.* § 851(c)(1) (emphasis added). At that hearing, the

2

On January 16, 2024, the government filed an information under Section 851 informing defendant and the Court of the government's intent to seek enhanced penalties against defendant under Section 841(b)(1)(A), should he be convicted of Counts 1 and/or 2, based on the same April 2015 predicate offense specified in the Third Superseding Indictment. (Doc. 99).

On January 25, 2024, after four days of trial, the jury found defendant guilty on all six counts of the Third Superseding Indictment. (Docs. 114; 115; 116; 125; 127). On February 8, 2024, defendant moved for acquittal and new trial, which the Court subsequently denied. (Docs. 128 & 143).

On June 21, 2024—after defendant's conviction, but before his sentencing—the Supreme Court of the United States decided *Erlinger v. United States*, 602 U.S. 821 (2024). In *Erlinger*, the Supreme Court explained that the Fifth and Sixth Amendments guarantee that "a unanimous jury ordinarily must find beyond a reasonable doubt any fact that increases a defendant's exposure to punishment." 602 U.S. at 836.[3] The *Erlinger* Court then held that the factual question of whether a defendant's predicate offenses were "committed on occasions different from one another," as required by Title 18, United States Code, Section 924(e)(1), must be found by a jury—not a judge—beyond a reasonable doubt. *Id.* at 835.

On July 10, 2024, defendant filed his Renewed Motion for Hearing to a Jury and

---

government has "the burden of proof beyond a reasonable doubt on any issue of fact," except for challenges to convictions on the basis that they were "obtained in violation of the Constitution of the United States" in which case the defendant has "the burden of proof by a preponderance of the evidence on any issue of fact raised" in his or her response to the information. *Id.* §§ 851(c)(1), 851(c)(2).

[3] This rule is subject to the "narrow exception" of *Almendarez-Torres v. United States*, 532 U.S. 224 (1998), which "permit[s] judges to find only 'the fact of a prior conviction.'" *Erlinger*, 602 U.S. at 838 (quoting *Alleyne v. United States*, 570 U.S. 99, at 111 n.1 (2013)). "Under that exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'" *Id.* (quoting *Mathis v. United States*, 579 U.S. 500, 511–12 (2016)).

Denial of Prior Conviction.[4]  (Doc. 152).  In his motion, defendant objected "to the Government's filing of the alleged previous conviction contained in the third superseding indictment filed at [(Doc. 91)] pursuant to [Title] 21, [United States Code, Section] 851[.]"  (Doc. 152).  Citing *Erlinger*, defendant asserted that he was entitled to have a jury find the facts necessary to determine whether he is subject to the enhanced mandatory minimum sentence under Title 21, United States Code, Section 841(b)(1)(A).  (*Id.*).

On September 11, 2024, the Court issued the Order granting defendant's motion, which this Nunc Pro Tunc Order now seeks to correct.  (Doc. 162).  In that Order, the Court found that under *Erlinger*, defendant is indeed constitutionally entitled to have a jury find the facts necessary to determine whether his prior conviction qualifies as a "serious drug felony" as would trigger the enhanced penalties of Section 841(b)(1)(A). (*Id.*, at 10–11).  The Court granted defendant's motion and stated that it would, by separate order, schedule a jury trial "to determine whether defendant's prior conviction qualifies as a predicate offense under Section 851."  (*Id.*, at 11).  The Court cited Section 851 because, after all, that section governs proceedings to establish prior convictions for the purpose of increased punishment for crimes under Section 841.  Yet, the Court subsequently realized it may have a problem on its hands.

On November 4, 2024, the Court issued an Order on its own motion for supplemental briefing regarding the proposed jury trial which would have the jury find the facts necessary to determine whether defendant's prior conviction qualifies for purposes of a sentencing enhancement under Sections 841 and 851.  (Doc. 174).  The Court explained that in order for enhanced sentencing penalties based on a prior

---

[4] As the Court observed in its prior Order on defendant's Renewed Motion for Hearing to a Jury and Denial of Prior Conviction, defendant up to this point in the case had "never directly raised the claim that the Constitution required a jury to decide whether his prior conviction qualified as a predicate offense under Section 851."  (Doc. 162, at 9).  "Thus, to the extent defendant captions his present motion as a 'Renewed Motion for Hearing to a Jury and Denial of Prior Conviction,' it is inaccurate."  (*Id.*).

4

conviction for a "serious drug felony" to apply, consistent with *Erlinger*, the jury must make a factual finding (1) that defendant served a sentence of imprisonment of more than twelve months on a conviction for a prior drug felony and (2) that such sentence terminated within fifteen years of the instant offense. (*Id.*, at 1–2). The Court also found that at defendant's trial, the government had not proven beyond a reasonable doubt the specific dates on which the relevant offenses of conviction occurred—i.e., Counts 1 and 2— and thus, in addition to determining the facts of whether and when defendant served his sentence for the April 2015 conviction, the jury may also need to determine the facts as to the precise dates on which defendant committed the offenses of conviction for purposes of the fifteen year limitation period. (*Id.*, at 3–4).

In that same Order, the Court directed the parties to file supplemental briefing on the issue of whether the Court has the authority to hold the kind of trial proposed. (*Id.*, at 4–6).[5] The Court called the parties' attention to a recent case from the state of New York, *People v. Banks*, 218 N.Y.S.3d 519 (N.Y. Sup. Ct. 2024). In *Banks*, that court faced a situation similar to the one the Court faces here. The defendant was convicted by a jury of various felonies. 218 N.Y.S.3d at 521. After his conviction, but before sentencing, the United States Supreme Court decided *Erlinger*. The *Banks* court explained that the government sought to subject the defendant to enhanced recidivist sentencing on the ground that he was a "persistent violent felony offender" under New York state law. *Id.* at 522. A "persistent violent felony offender" was defined as a

---

[5] The Court also directed the parties to address the additional issue of "whether a petit jury can be impaneled to find facts pertaining to enhanced penalties which were not alleged in an indictment and found by a grand jury." (Doc. 174, at 6). As the government correctly identifies, and the Court now recognizes, the Court was mistaken to ask this second question because the government explicitly alleged in the First, Second, and Third Superseding Indictments the fact of defendant's April 2015 conviction "for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense." (Docs. 29, 57 & 90). Thus, the facts pertaining to the enhanced penalties clearly were alleged by indictment and found by a grand jury.

person having two or more "predicate violent felony convictions." *Id.*, at 525. To meet the definition of a "predicate violent felony conviction," the sentence for that prior felony must have been imposed within ten years of the commission of the crime for which the defendant presently stood convicted; however, any period of time during which the defendant was incarcerated for any reason was to be excluded from that calculation, and thus the relevant ten-year period was to be tolled accordingly. *Id.* The government asserted that the defendant had two prior "predicate violent felony convictions" which fell within the ten-year period because that period had been tolled based on the dates of defendant's prior stints of incarceration. *Id.*

Upon examining the lineage of United States Supreme Court precedent leading up to *Erlinger*, the *Banks* court found that "after *Erlinger*, the court may not constitutionally sentence defendant as a persistent violent felony offender based on judicial findings as to the dates of his prior incarceration (and whether those dates extend the statutory ten-year period to render him eligible for recidivist sentencing)[.]" *Id.* at 527 ("The fact of incarceration on certain dates is a fact, irrespective of its complexity or self-evidence."). Given that finding, the government in *Banks* proposed—much like the parties here—that the court "impanel a new criminal jury for the sole purpose of deciding whether defendant was incarcerated during the periods they allege." *Id.* The *Banks* court found, however, that it lacked the power to hold such a trial. *See id.* at \*527–35. The state law analogue to Title 21, United States Code, Section 851 required that a hearing to determine whether the enhanced recidivist sentencing applied must "be before the court without a jury." *Id.* at 528 (citing N.Y. Crim. Proc. Law § 400.15(7)(a)). "That being so," the *Banks* court concluded, "when contested facts beyond the fact of a prior conviction—here, facts pertaining to tolling—are at issue and must be found, [the state law analogue to Section 851] is, under *Erlinger* and the Sixth Amendment, plainly unconstitutional as applied." *Id.*

The *Banks* court went on to consider whether it had the "inherent authority" to

devise and hold the kind of jury trial proposed despite the absence of statutory authorization for such a procedure. After a lengthy discussion, the court concluded that it had "no power to hold a criminal jury trial on the sole question of when defendant was previously incarcerated," and the court therefore was "unable to constitutionally determine that defendant is a persistent violent felony offender." *Id.* at 534.

Given the similarities between *Banks* and this case, the Court requested briefing from the parties on the issue of whether the Court has the inherent authority to devise and hold a jury trial solely to determine the necessary facts regarding defendant's prior conviction so as to permit the government to subject him to enhanced penalties under Section 841. The parties timely filed helpful supplemental briefs. (Docs. 176 & 177). The government's position is that the Court has the authority to hold such a jury trial and encourages the Court to do so. *See* (Doc. 177). Defendant, on the other hand—despite his initial request for a jury trial regarding his prior conviction—now maintains that the Court lacks the authority to hold such a jury trial. (Doc. 176).

### III.   *DISCUSSION*

Upon review of the parties' supplemental briefs, the Court concludes that at this point in the proceedings, the Court lacks the authority to devise and hold a jury trial to determine the necessary facts regarding defendant's prior conviction so as to permit the government to subject him to enhanced penalties under Section 841.

The government offers a variety of arguments in support of its position that the Court has the authority to hold such a jury trial. First, the government argues that Section 851 is simply not implicated here, and thus the Court need not confront the apparent issue that the provisions of Section 851 may be in conflict with the act of sending this case to a jury a second time. The government asserts that "Section 851 does not encompass questions about the characteristics of the sentence a defendant served as a result of a prior conviction," and thus "term-of-imprisonment-related questions" like those at issue here fall outside the statute's scope. (Doc. 177, at 2–3). The government recognizes,

however, that the Court of Appeals for the Sixth Circuit rejected this same argument in the case of *United States v. Fields*, 53 F.4th 1027 (6th Cir. 2022). The Sixth Circuit's reasoning is persuasive and worth quoting in full. In rejecting the government's argument that Section 851 does not encompass the same incarceration-related facts at issue here—i.e., time served and recency of release—the Sixth Circuit explained as follows:

> The government picks out portions of § 851 that mention the validity of convictions but omits parts of the statute using broader language, in particular § 851(c)(1) . . .. Section 851(c)(1) provides that "[i]f the person denies *any allegation* of the information of prior conviction," he must file a written response. 21 U.S.C. § 851(c)(1) (emphasis added). "Any allegation" is broad. The subsection adds that the court "shall hold a hearing to determine *any issues raised by the response* which would except the person from increased punishment." *Id.* (emphasis added). Had Congress sought to limit § 851 to challenges involving the validity or existence of convictions, it could have said so here. "[A]ny issues" is far broader. *See, e.g., id.* (stating that the government will have the burden of proof on "*any issue* of fact" in the § 851(c) hearing (emphasis added)). Section 851(c)(1) also expressly contemplates that the hearing may encompass facts beyond the mere fact of conviction. It states that the government's "failure" to "include . . . *any facts in addition to the convictions to be relied upon*" will not invalidate the § 851 notice. *Id.* (emphasis added). If the § 851 hearing is focused only on the existence of a conviction, why reference "facts in addition to the conviction"? *See, e.g.*, [*United States v.*] *Lee*, [No. 7:18-CR-153-FL-1,] 2021 WL 640028, at *5 [E.D.N.C. Feb. 18, 2021)] (citing these portions of § 851 and concluding that its scope "encompasses a variety of subsidiary findings necessary to define or qualify [a] prior conviction").
>
> Section 851(c)(1) refers to a "hearing to determine any issues raised by the [defendant's] response which would except the [defendant] from increased punishment." If a defendant has not served over a year in prison or was released more than fifteen years before the present offense, those facts "except [him] from increased punishment." If raised, they fit within § 851's scope.

*Fields*, 53 F.4th at 1040 (alternations in original except first ellipses and full case name). The Court agrees with the *Fields* court that the incarcerated-related facts at issue here fall within the scope of Section 851, assuming they were raised by defendant's response to

8

the government's Section 851 notice.

The government proceeds to argue that even if the incarceration-related facts at issue here fall within the scope of that which under Section 851 must be found by "the court without a jury," 21 U.S.C. § 851(c)(1), defendant nevertheless failed to follow the procedure set forth in Section 851(b) as he did not "den[y] that he has been previously convicted as alleged in the information." According to the government, defendant did not "raise" the issues regarding his prior conviction in accordance with Section 851's procedures because he did not address his denial of his previous conviction "as alleged in the information," and thus those issues do not fit within its scope and the Court need not concern itself with the application of Section 851. *See* (Doc. 177, at 4). The government here focuses on what appears to be a mere technical mistake by defendant. It is true that defendant did not address his denial to the allegations regarding his prior conviction as set forth in the *information*; rather, he addressed his denial to the very same allegations as set forth—indeed identically—in the Third Superseding Indictment. As noted above, defendant captioned his postconviction filing as a "Renewed Motion for Hearing to a Jury and Denial of Prior Conviction." (Doc. 152).[6] Within that pleading, defendant stated that he "through counsel objections [sic] to the Government's filing of the alleged previous conviction contained in the third superseding indictment filed at docket 91 pursuant to 21 U.S.C. 851 and denies that objection." (*Id.*). Defendant also stated that he "renews his motion" (even though he never previously so moved) "that the questions regarding the alleged previous conviction's validity and application of the increased mandatory minimum under 18 U.S.C. 841(b)(1)(A) be tried to a jury" under *Erlinger*. (*Id.*).

Although defendant's pleading may have been somewhat inartful, the Court refuses to turn its disposition on mere technical deficiencies void of meaningful substance.

---

[6] As noted above, defendant's caption was inaccurate to the extent he called this a "renewed" filing. *See supra* note 4.

9

The language regarding defendant's prior conviction to which defendant "objected" or "denied" in the Third Superseding Indictment is totally identical to the same language contained in the information; and, moreover, defendant's pleading invoked Section 851 in connection with his contesting of the allegations regarding his prior conviction, stating that he made his denial "pursuant to 21 U.S.C. 851." To hold that defendant failed to trigger the provisions of Section 851 only because he wrote "third superseding indictment" instead of "information"—when those two pleadings contained the same language verbatim regarding his prior conviction—would purely be to give effect to form over substance. The Court finds defendant's filing sufficient under Section 851(b) to constitute a "denial" of the allegations in the information regarding his prior conviction such that his written response to the information "raised" those issues for determination under Section 851(c).

The Court now arrives at the more challenging of the government's arguments. The government again calls attention to *Fields*, this time for the proposition that a second jury trial is permissible here, and thus an overview of that case proves helpful at this point. In *Fields*, the defendant was charged with a federal drug crime and, just as here, the government sought to subject the defendant to enhanced penalties under Title 21, United States Code, Section 841(b)(1)(A) on the basis of his two prior convictions for a "serious drug felony"—which, again just as here, required the government to show that for those convictions, the defendant had "served over a year in prison and was released within 15 years of the commencement of the instant offense." 53 F.4th at 1032.

Prior to trial, the defendant in *Fields* argued that the Sixth Amendment required a jury to decide those incarcerated-related facts while, at the same time, Section 851 required a judge to decide them, "creating an unsolvable problem" which, in the defendant's view, should prevent application of the enhanced penalties entirely. *Id.* Prior to trial, the government moved the district court to bifurcate the trial into two phases: first, the government would seek to prove the underlying drug crime, and if that resulted

10

in a conviction, the government would then seek to prove the incarceration-related facts. *Id.* at 1033. Such a bifurcated trial then took place, and at the conclusion of the first phase, the jury returned a guilty verdict on the substantive federal drug crime. *Id.* at 1034. The district court "then engaged in the mandated [Section] 851(b) colloquy with [the defendant], asking him whether he affirmed or denied that he was convicted of these two previous offenses," and the defendant "affirmed that he was." *Id.* The government then proceeded to put on evidence regarding the defendant's prior convictions during the second phase, and the jury returned a special verdict form finding as to both prior convictions that the defendant had served over a year in prison and was released within fifteen years of the instant offense. *Id.* After trial and before sentencing, the defendant in *Fields* "filed an 'Objection to § 851 Notice' . . . focusing exclusively on whether his prior offenses were 'serious drug offenses,' [not] raising any factual disputes regarding the length or recency of his incarceration for the two prior convictions." *Id.* at 1035. The district court ultimately disagreed with the defendant's purely legal arguments as to why his prior convictions were not "serious drug offenses" and sentenced him in accordance with the enhanced statutory penalties. *Id.*

On appeal, the defendant in *Fields* raised multiple challenges to the procedure used to impose his enhancement, including "that § 851(c) facially violates the Sixth Amendment by requiring judges to determine facts—the length and recency of incarceration—that the Constitution requires to be decided by a jury;" and "that the court violated § 851 by sending those facts to the jury[.]" *Id.* The Sixth Circuit rejected the defendant's former argument, refraining from deciding whether the Constitution required a jury to decide the incarceration-related facts (which *Erlinger* later answered in the affirmative) and finding that even if that requirement were so, defendant suffered no constitutional violation because that requirement was indeed met by the jury finding those facts at his trial. *Id.* at 1037–38.

As for the defendant's latter argument, the Sixth Circuit explained that "[t]he

11

question is whether § 851 *required* the district court to decide the incarceration-related facts here—i.e., whether it *precluded* the district court from sending those factual questions to the jury in the post-guilt phase of the bifurcated trial proceeding." *Id.* at 1038 (emphases in original). The Sixth Circuit concluded that "nothing in the statute explicitly forbids the district court from submitting to the jury the factual questions it submitted *at the point it did so*." *Id.* at 1043 (emphasis added). Importantly, the particular stage of the case at which the district court submitted the issue of incarceration-related facts to the jury was essential to the Sixth Circuit's conclusion, since the proceedings had not yet "become" a Section 851 hearing required by the statute. The Sixth Circuit explained as follows:

> Nothing in § 851 expressly forbids a court from sending factual questions to a jury during a bifurcated trial merely because they may come up later in a § 851(c) hearing. The statute is silent on what a court can and cannot do during the trial phase of a criminal proceeding. . . . We agree, of course, that the phrase "before the court without a jury" means what it says and precludes a jury's involvement. But the question is how far this language extends—i.e., at what point the jury's involvement is precluded. Section 851 clearly requires a court, not a jury, to decide disputed issues when the § 851 hearing happens. But a § 851 hearing necessarily cannot occur until a defendant files a written § 851 response. *See* 21 U.S.C. § 851(c)(1). Fields had not filed a § 851 response when phase two of the trial proceeding occurred; therefore, phase two of the trial could not have been a § 851(c)(1) hearing. And Fields never explains how the statute extends to prohibit the court from sending questions to the jury before the § 851 hearing, during a bifurcated trial.

*Fields*, 53 F.4th at 1041–42 (footnote omitted).

Here, the obvious distinction from *Fields* is that unlike the district court there, this Court decided not to hold a bifurcated trial, and the trial concluded without the jury making a finding as to the relevant incarceration related facts.[7] Furthermore, when the

---

[7] In the Court's Order on the parties' pretrial motions in limine, the Court addressed the question of whether the government could introduce evidence regarding defendant's prior conviction at trial. (Doc. 87, at 6–10). Unlike the district court in *Fields*, the Court rejected the government's

12

Case 6:23-cr-02033-CJW-MAR    Document 183    Filed 12/30/24    Page 12 of 18

district court in *Fields* submitted the incarceration-related factfinding questions to the jury, the defendant had not yet filed a Section 851(b) response to the prior conviction allegations, while here, defendant placed those factfinding questions at issue with an invocation of Section 851 in his written response to the allegations in the information regarding his prior conviction. *See* (Doc. 152). The absence of a Section 851(b) response prior to the jury's factfinding was essential to the Sixth Circuit's holding that such factfinding by the jury was permissible in *Fields* because, without the filing of a Section 851(b) response, Section 851(c)'s preclusion of a jury's factfinding does not extend. This is because the factual issues which may be found only by "the court without a jury" under Section 851(c) are necessarily determined by the factual issues which a defendant first raises in his Section 851(b) response. That determination had not been made in *Fields*, and thus no factual issues had been captured by Section 851(c)'s requirement that such factual issues be resolved by the judge and precluded from the jury. If the defendant had instead raised factual issues explicitly under Section 851 "after conviction but before pronouncement of sentence," then it follows that Section 851(c) would have extended— or kicked in, so to speak—to require a hearing "before the court without a jury" whereat the judge must, under the statute, act as factfinder to resolve those issues. Here, because defendant has indeed raised those factual issues in a postconviction Section 851 response,

---

suggestion that the jury should determine the incarceration-related facts necessary to trigger the enhanced penalties of Section 841(b)(1)(A). (*Id.*). Prior to trial, defendant proposed a bifurcated trial similar to that of *Fields* whereby the jury would find the incarceration-related facts only if and when the jury first found him guilty of the substantive offense, but the Court rejected that proposal. *See* (Doc. 162, at 6). In a subsequent Order, the Court found defendant forfeited his claim that the Court should have presented those factual issues to the jury, because he failed to object to the Court's rejection of his proposed bifurcated trial. (*Id.*, at 9–10). The Court went on to conclude, however, that in light of *Erlinger*, defendant was nonetheless entitled to a jury trial to determine the incarceration-related facts at issue and that such a trial should be scheduled. (*Id.*, at 10–11). It is this latter conclusion which the Court now seeks to correct with this Nunc Pro Tunc Order, as the Court finds that even though defendant is indeed entitled to have a jury determine those incarceration-related facts for the statutory enhancement to apply, the Court lacks the authority to hold such a trial and thus will not schedule one.

13

this is precisely the point at which the case now sits.  Thus, unlike *Fields*, Section 851(c) now clearly applies and mandates a hearing "before the court without a jury" to resolve those factual issues, precluding a jury trial doing the same.

The Court's finding that here, unlike *Fields*, Section 851 has clearly extended to require the Court alone to determine the incarceration-related factfinding questions at issue, which precludes a jury from doing the same, creates an obvious conflict between Section 851 and the Sixth Amendment as interpreted by *Erlinger*, as well as a conflict between Section 851 and Federal Rule of Criminal Procedure 23(a).  The *Fields* court managed to avoid these conflicts, explaining as follows:

> Federal Rule of Criminal Procedure 23(a) states that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless" the defendant and government waive the jury trial in writing and the court approves.  Fed. R. Crim. P. 23(a).  The committee notes make clear that this rule aims to codify the requirements of the Sixth Amendment.  Fed. R. Crim. P. 23(a) advisory committee's note 1 to 1944 adoption.  Rule 23(a) became effective in 1946, while § 851 was enacted in 1970.  *See* Fed. R. Crim. P. historical note; Controlled Substances Act, Pub. L. No. 91-513 § 411, 84 Stat. 1242, 1269 (1970).  Absent a "clear and manifest" intent, we generally disfavor implied repeals of earlier statutes by later ones, *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987) (internal quotation marks omitted); *Beckert v. Our Lady of Angels Apartments, Inc.*, 192 F.3d 601, 606 (6th Cir. 1999), and that principle applies to implied repeals of Federal Rules as well, *Callihan v. Schneider*, 178 F.3d 800, 802–03 (6th Cir. 1999); *Zedner v. United States*, 547 U.S. 489, 507, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006); *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S. Ct. 182, 84 L. Ed. 181 (1939) ("It is a cardinal principle of construction that repeals by implication are not favored.  When there are two acts upon the same subject, the rule is to give effect to both if possible.  The intention of the legislature to repeal 'must be clear and manifest.'" (citations and internal quotation marks omitted)).  But the practical import of Fields's argument is that § 851 impliedly repeals Rule 23(a)'s requirement to have a jury trial on any issues implicating the Sixth Amendment.  So, Fields's argument that § 851 forbids or invalidates the procedure employed here creates a constitutional-avoidance and an "implied-repeal" problem.  When statutes are ambiguous, we avoid reading them to create constitutional problems, and in general, we avoid readings

14

that treat a subsequent statute as impliedly repealing a prior statute (or Federal Rule). Fields's reading would do both.

53 F.4th at 1042 n.6.

In short, the Sixth Circuit successfully found Section 851 amenable to construction such that the constitutional-avoidance and implied-repeal problems could be avoided because, as explained above, the proceedings in the district court there had not yet "become" a Section 851 hearing mandated by the statute since the defendant had not yet "raised" the issues in a Section 851 response, so Section 851 did not prevent the jury from determining those issues "at the point it did so." *Id.* at 1041–43. Here, defendant filed a postconviction Section 851(b) response by which he has "raised" the issues regarding the incarceration-related facts mandating a hearing "before the court without a jury" to resolve those factual issues. Thus, in comparison to *Fields*, here Section 851 more clearly applies and indeed more clearly conflicts with the Sixth Amendment (and by extension Federal Rule of Criminal Procedure 23(a)), and the Court simply cannot find a way to construe Section 851 to avoid this conflict.

Upon distinguishing this case from *Fields*, the Court finds itself instead in the province of *People v. Banks*, 218 N.Y.S. 3d 519 (N.Y. Sup. Ct. 2024), and because Section 851 now mandates that the Court find facts which the Sixth Amendment bars it from finding, the Court finds Section 851 to be unconstitutional as applied to this case in the unique and likely never again to be repeated posture in which it sits.

Having determined this case is within the ambit of Section 851 which mandates that the Court alone must determine the incarceration-related factfinding questions of time served and recency of release with respect to defendant's prior conviction, the Court now squarely faces the question of whether it can devise and hold a jury trial to determine those same facts anyway, despite the statute. The Court finds it cannot do so. The government argues that "[i]f the Court accepted the argument that [Section] 851 was inconsistent with the Sixth Amendment, it would be required to apply the Constitution,

15

rather than adhere to an arguably unconstitutional application of Section 851, and have a jury decide" the incarceration-related facts at issue here. (Doc. 177, at 7). The government cites numerous cases for the familiar proposition that the Constitution trumps an act of Congress where the two conflict. (*Id.*). Indeed, Section 851's requirement that a judge must find those facts conflicts with the Sixth Amendment's requirement that a jury must find them. The Sixth Amendment accordingly trumps in the sense that to subject defendant to enhanced penalties through judicial factfinding in accordance with Section 851 would deprive him of his constitutional entitlement to a jury's determination of those facts, and thus the Court must indeed "apply the Constitution" by refraining from deciding those facts, respecting defendant's right to be free from judicial adjudication of statutory penalties.

It does not follow, however, that because the Sixth Amendment bars the Court from finding the incarceration-related facts that would trigger statutory sentencing enhancements, the Court is therefore automatically empowered to devise and hold another, separate jury trial on those facts with a new jury *after* defendant has been convicted of the underlying crime in the absence of any legislative authorization for such a procedure and indeed in direct contradiction to the (albeit unconstitutional as-applied) legislative framework for such factfinding. It is true that a federal district court "possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)); *see also Degen v. United States*, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities.") (collecting cases). It is this inherent authority which the Court consulted to ask whether it could hold the kind of trial proposed here. Yet, there are limits on a district court's inherent authority, "for there is a danger

16

of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen*, 517 U.S. at 823 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Thus, "it is well established that '[e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (alterations in original) (quoting *Thomas v. Arn*, 474 U.S. 140, 148 (1985)). "To allow otherwise 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Id.* (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980)); *see also Dietz*, 579 U.S. at 46 (explaining that a district court's exercise of inherent powers "cannot contradict any express rule or statute").

Here, with the benefit of *Erlinger* coupled with hindsight, it is clear that the Court could have avoided this problem had it submitted the factual issues to the jury before the trial concluded resulting in defendant's convictions for the underlying crimes and his filing of a response under Section 851, which now mandates a hearing "before the court without a jury" to resolve those factual issues. *See Fields*, 53 F.4th at 1041–43. Now, however, if the Court were to devise and hold a second jury trial to resolve those issues, it would directly contradict the statutory course by which Congress permits the Court to arrive at adjudging a defendant as subject to enhanced statutory criminal penalties at this stage in the proceedings. That being so, the Court finds it lacks the inherent authority to hold such a trial, for to act otherwise would do violence to the fundamental constitutional doctrine of the separation of powers. *Bank of Nova Scotia*, 487 U.S. at 254; *Dietz*, 579 U.S. at 46. Thus, the Court finds it cannot constitutionally determine whether defendant has a prior conviction for a "serious drug felony" to subject him to enhanced penalties under Title 18, United States Code, Section 841(b)(1)(A) in connection with his convictions on Counts 1 and 2 of the Third Superseding Indictment. Accordingly, the Court **vacates** its prior Order (Doc. 162) on defendant's Renewed Motion for Hearing to

17

a Jury and Denial of Prior Conviction (Doc. 152) and **denies** defendant's motion for a jury trial.

### IV. CONCLUSION

For these reasons, the Court **vacates** its prior Order (Doc. 162) on defendant's Renewed Motion for Hearing to a Jury and Denial of Prior Conviction (Doc. 152) and **denies** defendant's motion for a jury trial. The Court will schedule this matter for sentencing by separate Order.

**IT IS SO ORDERED** this 30th day of December, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

18